NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHARLES A. BOYD, JR., | |
| **Plaintiff,** | Civil Action No. 15-0026 (ES) (MAH) |
| **v.** | OPINION |
| CITY OF JERSEY CITY, et al., | |
| **Defendants.** | |

**SALAS, DISTRICT JUDGE**

This action arises out of Plaintiff Charles A. Boyd, Jr.'s ("Boyd or Plaintiff") Complaint alleging malicious prosecution, false arrest, negligent supervision and hiring, excessive use of force, and violations of his Fourth and Fourteenth Amendment rights by police officers Melissa Sarmiento ("Sarmiento"), Janixza Domenech ("Domenech"), Joseph Olszewski ("Olszewski") (the "Responding Officers"), Thomas F. Broderick ("Broderick"), Brian R. Davis ("Davis"), Gary A. Moffit ("Moffit"), Joseph Doyle ("Doyle") (together with the Responding Officers, the "Officers"), the Jersey City Police Department ("JCPD")[1], and the City of Jersey City ("Jersey City") (together with the Officers and JCPD, "Defendants"). This Court has jurisdiction under 28 U.S.C. § 1331 and supplemental jurisdiction over the state law claims under to 28 U.S.C. § 1367. Defendants moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. (D.E.

---

[1]     Defendants argue in their brief that the claims against the JCPD should be dismissed. (Def. Mov. Br. at 27). The Court agrees because "police departments cannot be sued in conjunction with municipalities because police departments are administrative arms of municipalities, not separate entities." *GJJM Enterprises, LLC v. Cty. Of Atl. Cty.*, 293 F. Supp. 3d 509, 516 (D.N.J. 2017); *see also Padilla v. Twp. Of Cherry Hill*, 110 F. App'x 272, 278 (3d Cir. 2004) ("In Section 1983 actions, police departments cannot be sued in conjunction with municipalities . . . ."). As a result, the Jersey City Police Department is entitled to summary judgment on all claims brought against it under 42 U.S.C. § 1983.

No. 30).  Having considered the parties' submissions in support of and in opposition to Defendants' motion, the Court decides the matter without oral argument.  *See* Fed. R. Civ. P. 78(b).  For the reasons set forth below, the Court GRANTS-in-part and DENIES-in-part Defendants' motion for summary judgment.

## I.    BACKGROUND[2]

*Factual Background.*  In the early morning hours on August 5, 2012, three JCPD police officers responded to a complaint of loud noise coming from Plaintiff's residence.  (SMF ¶ 4).  Once on Boyd's property, Officers Domenech, Sarmiento, and Olszewski spoke with Boyd—who was hosting a party—and informed him that "the music had to be turned off because of the complaints," and that "if they had to come back [] the appropriate summonses would be issued." (*Id.* ¶ 6).  The music was turned off and Officers Domenech, Sarmiento, and Olszewski left.  (*Id.* ¶ 6–7).  While making their way back to their patrol cars, Domenech, Sarmiento, and Olszewski heard loud music, which they believed was coming from Boyd's residence.  (*Id.* ¶ 7).  Because they estimated that up to 70 people were at Boyd's residence they called for backup before returning to Boyd's property.  (*Id.*).

The Responding Officers approached Boyd in his backyard and asked for his identification. (*Id.* ¶ 8).  Boyd refused and instructed his wife "not to give the officers his identification."  (*Id.*).

---

[2]    The Court distills these facts from Defendants' Statement of Undisputed Material Facts in Support of Defendants' Motion for Summary Judgment (D.E. No. 30-3, ("SMF")) and exhibits accompanying the parties' submissions.  Local Civil Rule 56.1(a) requires that the "opponent of summary judgment shall furnish, with its opposition papers, a responsive statement of material facts, addressing each paragraph of the movant's statement, indicating agreement or disagreement and, if not agreed, stating each material fact in dispute and citing to the affidavits and other documents submitted in connection with the motion; any material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion."  Further, this Court has held that "any statement, or portion thereof, that is not clearly denied—in *substance*, not merely with the label 'disputed'—and with a proper citation to the record in a responsive Rule 56.1 statement is deemed admitted." *Juster Acquisition Co. LLC v. North Hudson Sewerage Auth.*, 2014 WL 268652, at *1 (D.N.J. Jan. 23, 2014) (emphasis in original).  Thus, because Plaintiff here has failed to supply the Court with a responsive statement disputing material facts with citations to the record, the facts in Defendants' SMF are treated as undisputed for purposes of the instant motion.

Olszewski then ordered Domenech to "confiscate [Boyd's] music equipment," which the Responding Officers believed "[was] a Dell laptop." (*Id*. ¶ 9); (Olszewski Cert. ¶ 13). As Domenech went to confiscate the laptop, Boyd "walked over to protect his laptop by [] guarding and hovering over it in order to prevent the officers from taking [it]," and then pushed Domenech. (SMF ¶ 10–11). Officers Moffit and Domenech attempted to arrest Boyd who refused to place his arms behind his back and whose yelling began to agitate the other party-goers in his backyard. (*Id*. ¶ 12). Boyd testified that he was standing up while the Officers placed him into handcuffs and that he "was not pushed and couldn't recall an officer hitting him." (*Id*. ¶ 13). Boyd did not receive any medical treatment—emergency care or otherwise—and was released by JCPD custody six-and-a-half-hours after his arrest. (*Id*. ¶ 15); (D.E. No. 30-7 at 61). Boyd was charged with aggravated assault on a police officer, resisting arrest, inciting a riot, and disorderly conduct. (*Id*. ¶ 16). On June 20, 2014, a Judgment of Acquittal was entered on Boyd's behalf for all charges. (Compl. Count II ¶ 3).

In August 2014, Plaintiff filed the instant complaint in New Jersey Superior Court, alleging (i) malicious prosecution, false imprisonment, and false arrest in violation of his Fourth and Fourteenth Amendment rights (Count I); (ii) that the JCPD and Jersey City implemented a policy or custom that lead to the violation of Plaintiff's constitutional rights pursuant to 42 U.S.C. § 1983 (Counts III and V); (iii) excessive use of force in violation of his Fourth Amendment rights pursuant to 42 U.S.C. § 1983 (Count IV); (iv) that because of an unlawful custom or policy, Plaintiff's constitutional rights were violated (Count VI); (v) failure by the JCPD and Jersey City to adequately hire, train, and supervise police officers that led to the violation of Plaintiff's constitutional rights pursuant to 42 U.S.C. §§ 1983, 1986 (Count VII and IIX); and (vi) negligence pursuant to N.J.S.A. § 59:8-1 *et seq.* (Counts II, IX and X). (D.E. No. 1, Compl. at 5–16).

Defendants successfully removed the complaint to this Court on January 5, 2015. (*Id.* ¶ 2). Following the conclusion of fact discovery, Defendants moved for summary judgment on all counts. (Def. Mov. Br.). Boyd submitted a sealed, and largely unresponsive, opposition to Defendants' motion. (Pl. Opp.). Defendants submitted a reply to Plaintiff's opposition. (D.E. No. 32). This matter is now ripe for resolution.

## II. LEGAL STANDARDS

***Summary Judgment.*** Summary judgment is appropriate if the moving party shows that there is "no genuine issue of any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).[3] A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* The burden is on the moving party to show no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof at trial, the moving party may discharge its burden by showing "that there is an absence of evidence to support the non-moving party's case." *Id.* at 325. If the movant meets this burden, the non-movant must then set forth specific facts that demonstrate the existence of a genuine issue for trial. *Id.* at 324; *Azur v. Chase Bank, USA, Nat'l Ass'n*, 601 F.3d 212, 216 (3d Cir. 2010).

Conversely, where the moving party bears the burden of proof at trial, it "must show that it has produced enough evidence to support the findings of fact necessary to win." *El v. Se. Pa. Transp. Auth. (SEPTA)*, 479 F.3d 232, 237 (3d Cir. 2007). "Put another way, it is inappropriate to grant summary judgment in favor of a moving party who bears the burden of proof at trial unless

---

[3] Unless otherwise indicated, all internal citations and quotation marks are omitted, and all emphasis is added.

a reasonable juror would be compelled to find its way on the facts needed to rule in its favor on the law." *Id.* at 238.

Notably, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. But the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also Swain v. City of Vineland*, 457 F. App'x 107, 109 (3d Cir. 2012) (stating that the non-moving party must support its claim "by more than a mere scintilla of evidence").

> ***Section 1983 Actions.*** Section 1983 provides, in relevant part:
>
>> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Thus, to state a claim under § 1983, Plaintiff must allege (i) the violation of a right secured by the Constitution or laws of the United States; and (ii) that the alleged deprivation was committed or caused by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

## III.    DISCUSSION

Defendants move for summary judgment on all of Boyd's claims. (Def. Mov. Brief. at 2). Specifically, Defendants argue that the Officers had probable cause to arrest Boyd, thus Boyd's claims for false arrest, false imprisonment, and malicious prosecution fail. (*Id.*). Defendants further argue that Boyd's Fourth Amendment excessive-force claims fail because "the record is devoid of anything more than allegations of a minimum amount of force used during [Boyd's]

arrest." (*Id.*). Lastly, with respect to Plaintiff's state-tort claims, Defendants contend that they are entitled to judgment because of Boyd's "failure to serve the City Defendants with a Notice of Claim pursuant to the New Jersey Tort Claims Act." (*Id.* at 2–3).

This Court has thoroughly reviewed the parties' submissions and all documents in the record. For the reasons below, the Court GRANTS-in-part and DENIES-in-part Defendants' motion for summary judgment.

***New Jersey Tort Claims Act***. The notice provisions of the New Jersey Tort Claims Act (the "Act") "apply to causes of action based on the intentional conduct of public employees." *Davis v. Twp. of Paulsboro*, 371 F. Supp. 2d 611, 618 (D.N.J. 2005); *Velez v. City of Jersey City*, 180 N.J. 284 (2004). The Act provides that "[n]o action shall be brought against a public entity or public employee under [the Act] unless the claim upon which it is based shall have been presented in accordance with the procedures set forth in this chapter." N.J.S.A. § 59:8-3. Relevant here is the Act's requirement that "[a] claim relating to a cause of action for [] injury or damage to person or to property shall be presented as provided in this chapter not later than the 90th day after accrual of the cause of action." N.J.S.A. § 59:8-8. Only until "[a]fter the expiration of six months from the date notice of the claim is received, [may] the claimant [] file suit in an appropriate court of law." *Id.* Thus, failure to comply with the Act's 90-day notice requirement "is a ground for dismissal with prejudice." *Davis*, 371 F. Supp. 2d at 618.

The New Jersey legislature grants courts with limited discretion to allow late notice if a motion to file an untimely notice is made "within one year after the accrual of [the] claim" and the reasons for the untimeliness are based on "sufficient reasons constituting extraordinary circumstances." N.J.S.A. § 59:8-9. But "in no event may any suit against a public entity or a

public employee arising under [the Act] be filed later than two years from the time of the accrual of the claim." *Id.*

The Act is abundantly clear: plaintiffs seeking redress under the Act must notify the relevant governmental entity of the claim or else must seek permission from a court to file an untimely notice. *Davis*, 371 F. Supp. 2d at 618. Absent either, a plaintiff is barred from bringing suit against the governmental entity. *Velez*, 180 N.J. at 290 (2004).

Here, Defendants contend that Boyd failed to file notice with Jersey City before filing suit. (Def. Mov. Br. at 20). In support of their position, Defendants submitted a certification by Kathleen Kolar, the custodian of all records for the Jersey City Law Department for matters related to claims filed against Jersey City under the Act. (D.E. No. 30-9 ¶ 2). Kolar's certification states: (i) "[o]n or about December 5, 2014 the City of Jersey City received a summons and complaint Docket No.: HUD-L-3413-14 from Plaintiff Charles A. Boyd, Jr."; and (ii) "I searched the Law Department's database and my files for a Notice of Claim regarding this matter." (*Id.* at 4–5). Her records show that the City of Jersey City did not receive a Notice of Tort Claim regarding this matter." (*Id.*).

Moreover, nothing in the record demonstrates that Plaintiff filed notice with Jersey City as required by the Act. Plaintiff's opposition to Defendant's motion for summary judgment is silent to Defendant's allegations that Boyd failed to provide Jersey City with the required notice. (*See generally* Pl. Opp.). And this Court has received no application from Plaintiff seeking permission to file an untimely notice pursuant to N.J.S.A. § 59:8-9. Thus, Boyd's claims filed under the Act are no longer viable and Defendants are therefore entitled to summary judgment on all of Boyd's state tort claims. Accordingly, the Court grants Defendants' motion for summary judgment on Counts II, IX, and X.

***False Arrest, False Imprisonment, and Malicious Prosecution.*** The Court first addresses Defendants' contention that Boyd's false arrest, malicious prosecution, and false imprisonment claims brought under the ambit of the Fourteenth Amendment should be dismissed. (Def. Mov. Br. at 5). Generally, "when government behavior is governed by a specific constitutional amendment, due process analysis is inappropriate." *Berg v. Cty. of Allegheny*, 219 F.3d 261, 268–69 (3d Cir. 2000). And "the constitutionality of arrests by state officials is governed by the Fourth Amendment rather than due process analysis." *Id.* Lastly, Plaintiff's opposition is unresponsive on the issue. Thus, this Court's analysis of Boyd's false arrest, malicious prosecution, and false imprisonment claims will be limited to the Fourth Amendment, and the Court will GRANT Defendants' motion for summary judgment with respect to Boyd's Fourteenth Amendment claim.

Boyd alleges that the Officers falsely arrested and imprisoned him, and maliciously prosecuted him for aggravated assault on a police officer, disorderly conduct, obstruction, inciting a riot, and resisting arrest, in violation of his Fourth Amendment rights. (Compl. at 6). To survive summary judgment for false arrest, malicious prosecution, and false imprisonment, a plaintiff is required to show that the underlying arrest was not supported by probable cause. *Anderson v. Perez*, 677 F. App'x 49, 51–52 (3d Cir. 2017) (affirming grant of summary judgment after finding that plaintiff's "claims that require an absence of probable cause—false arrest, malicious prosecution, and false imprisonment—fail"); *see also Lawson v. City of Coatesville*, 42 F. Supp. 3d 664, 673 (E.D. Pa. 2014) (stating that the "threshold question" for plaintiff's Fourth Amendment claims for false arrest, unlawful search, false imprisonment, and malicious prosecution is whether there was probable cause to arrest him).

"An arrest was made with probable cause if at the moment the arrest was made the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy

information were sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense." *Wright v. City of Philadelphia*, 409 F.3d 595, 602 (3d Cir. 2005) (cleaned up). "The test for an arrest without probable cause is an objective one, based on the facts available to the officers at the moment of arrest." *Quinn v. Cintron*, 629 F. App'x at 399 (3d Cir. 2015). Although generally "the question of probable cause in a section 1983 damage suit is one for the jury," a district court may conclude "that probable cause exists as a matter of law if the evidence, viewed most favorably to Plaintiff, reasonably would not support a contrary factual finding, and may enter summary judgment accordingly." *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 788–89 (3d Cir. 2000). Therefore, if probable cause existed for at least one of the charges, a false arrest claim must fail.

The undisputed facts show that the Officers had probable cause to arrest Boyd for at least obstruction under N.J.S.A. § 2C:29-1. Under New Jersey law, "[a] person commits an offense if he purposely obstructs, impairs or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from lawfully performing an official function by means of flight, intimidation, force, violence, or physical interference or obstacle, or by means of any independently unlawful act." N.J.S.A. § 2C29-1. Thus, "to arrest a plaintiff for obstruction, a law enforcement officer must possess probable cause that a suspect obstructed a public servant's lawful duties by [] physical interference or obstacle . . . ." *Trafton v. City of Woodbury*, 799 F. Supp.2d 417, 437 (D.N.J. 2011). Further, "to support an obstruction of justice charge, [a] defendant must have affirmatively done something to physically interfere or place an obstacle to prevent the police from performing an official function." *Caronte v. Chiumento*, No. 15-1828, 2018 WL 1135331, at *3 (D.N.J. Mar. 2, 2018).

Here, Defendants point to Boyd's uncontroverted testimony that he physically prevented the Officers from seizing his laptop. (Def. Mov. Br. at 9). Boyd testified, "I stood over it and I guarded it, you know, with my body." (Boyd Dep. at 54:8–10). During the testimony Boyd was asked: "So you wanted to prevent [the Officers] from taking the laptop; correct?" (Boyd Dep. at 54:8–10). And he replied: "Correct." (*Id.*).

In the context of complying with an arrest that the arrestee believes is unlawful, the Supreme Court of New Jersey has held that "a person has no constitutional right to flee from an investigatory stop." *State v. Williams*, 192 N.J. 1, 12 (2007). The *Williams* court overturned the the lower court's holding that a suspect could not be charged with obstruction pursuant to N.J.S.A.§ 2C:29-1 for failing to comply with an officer's command during a putatively unconstitutional seizure. *Id*. The court noted that "the Legislature did not intend that a person involved in a police encounter should have an incentive to flee or resist, thus endangering himself, the police, and the innocent public." *Id*. (internal quotations omitted). Thus, probable cause exists to arrest pursuant to N.J.S.A. § 2C:29-1 when a suspect physically interferes with police conduct, even if the arrestee believes the police officer is acting unlawfully. *Id.*; *see also Precois v. Dilollo*, No. 13-6279, 2015 WL 8513561, at *4 (D.N.J. Dec. 10, 2015).

So, even if Boyd believed that the police presence on his property and the seizure of his laptop were unconstitutional, he was not free to disregard the commands of the Officers and was not entitled to obstruct their attempts to seize his property. Adjudication of an alleged violation of a person's Fourth Amendment rights is better suited for a courtroom. Because Boyd physically interfered with the seizure of his laptop, the Officers had probable cause to place him under arrest for obstruction pursuant to N.J.S.A. § 2C:29-1.

Next, the Court turns to Boyd's false imprisonment claim. A false imprisonment claim "based on an arrest without probable cause is grounded in the Fourth Amendment's guarantee against unreasonable seizures." *Groman v. Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995). It is well established in the Third Circuit that an arrest without probable cause is a Fourth Amendment violation actionable under § 1983. *See Berg,* 219 F.3d at 268–69 (collecting cases); *see also Albright v. Oliver,* 510 U.S. 266, 274 (1994) (holding that a section 1983 claim for false arrest may be based upon an individual's Fourth Amendment right to be free from unreasonable seizures). "[W]here the police lack probable cause to make an arrest, the arrestee has a claim under § 1983 for false imprisonment based on a detention pursuant to that arrest." *Groman*, 47 F.3d at 636; *Wallace v. Fegan*, 455 F. App'x 137, 139 (3d Cir. 2011). But it is also equally well settled that "an arrest based on probable cause could not become the source of a claim for false imprisonment." *Groman*, 47 F.3d at 636 (citing *Baker v. McCollan*, 443 U.S. 137, 142 (1979)). Thus, when probable cause exists for an arrest, and imprisonment arises from that same arrest, a claim for false arrest will fail.

As previously discussed, the Officers had probable cause to arrest Boyd for obstruction pursuant to N.J.S.A. § 2C:29-1 because he physically interfered with their attempt to seize his laptop. (*See supra* at 10). Although the Officers charged Boyd with several charges in addition to his obstruction charge, his detention for obstruction was grounded in the probable cause the Officers had to arrest him. Boyd testified that following his arrest, he was detained by the JCPD for less than 24 hours, and he does not allege that his detention by the JCPD was unreasonable in its duration or disproportionate to the offenses for which he was arrested and charged. (Boyd Dep. at 63:24–25). Thus, because Boyd's detention stemmed from an arrest made with probable cause,

his claim for false arrest fails. Accordingly, the Court grants Defendants' motion for summary judgment on Boyd's claims for false arrest and false imprisonment.

The Court finally turns to Boyd's malicious prosecution claim. Malicious prosecution exists both as a state tort claim and as a violation of the Fourth Amendment. *See Garlanger v. Verbeke*, 223 F. Supp. 2d 596, 604 (D.N.J. 2002). Plaintiff's complaint does not make clear whether his malicious prosecution claim is based on state law grounds or on federal constitutional grounds. To the extent Plaintiff's malicious prosecution claim is based on a state law claim, it fails because Boyd failed to notice Jersey City as he is required to do under the New Jersey Tort Claims Act. (*See supra* at 7).

To prove malicious prosecution under the Fourth Amendment pursuant to § 1983, a plaintiff must show that (i) the defendant initiated a criminal proceeding; (ii) the criminal proceeding ended in the plaintiff's favor; (iii) the defendant initiated the proceeding without probable cause; (iv) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (v) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. *Johnson v. Knorr*, 477 F.3d 75, 81–82 (3d Cir. 2007). The second element of a malicious prosecution claim (i.e., favorable termination of the criminal proceeding) is established when the plaintiff is "'innocent of [the] crime charged in the underlying prosecution.'" *Smart v. Winslow*, No. 13-4690, 2015 WL 5455643, at *7 (D.N.J. Sept. 16, 2015) (quoting *Hector v. Watt*, 235 F.3d 154, 156 (3d Cir. 2000)).

Here, a criminal proceeding was initiated against Boyd and the criminal proceeding ended in Boyd's favor. (Compl. at 8, ¶¶ 2–3). Although Defendants claim that Boyd "pushed Officer Domenech," resisted arrest, incited a riot, and behaved disorderly, Boyd denied he did any of those things during his deposition and testified that he "just stood there" as the Officers arrested him.

(*Compare* SMF ¶¶ 11–13, *with* Boyd Dep. at 53–57).  Despite this factual dispute, even assuming Boyd could prove that he did not push Officer Domenech, that he did not resist his arrest, that he did not incite a riot, and that he did not behave disorderly, he nonetheless fails to satisfy the fifth element for malicious prosecution.  Aside from Boyd's arrest for obstruction, which the Court determined was made with probable cause, nowhere in his Complaint does Boyd allege that he suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.  (*See generally* Compl.).  Boyd does not allege that he was subject to bail, pretrial detention, or incarceration prior to trial.  (*Id.*).  He alleges only that "[o]n or about June 20, 2014, a trial upon the charges was held in the Jersey City Municipal Court [] at which all of the charges which had been brought against [Boyd] were dismissed and a Judgment of Acquittal was entered on his behalf at the conclusion of the presentation of the State's Case."  (Compl. at 8, ¶ 3).

For a plaintiff to satisfy the fifth element for malicious prosecution brought under § 1983, a plaintiff must show "that he suffered a seizure significant enough to constitute a Fourth Amendment violation."  *DiBella v. Borough of Beachwood*, 407 F.3d 599, 603 (3d Cir. 2005) (holding that the Fourth Amendment does not extend beyond the period of pretrial restrictions and, as a result, the restriction of plaintiff's liberty during a municipal court trial could not constitute a deprivation of his liberty for purposes of the Fourth Amendment).  As such, Boyd's failure to identify a seizure of a constitutional magnitude is fatal to his claim for malicious prosecution.  For that reason, the Court grants Defendants' motion for summary judgment on Boyd's malicious prosecution claim.

***Excessive Use of Force and Qualified Immunity.***  From the start, the Court recognizes that Defendants argue Boyd's Fourth Amendment excessive force claim implicates the qualified immunity doctrine, which when applied appropriately, insulates defendants acting in their

individual capacities from liability. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, 566 U.S. 658, 664 (2012). Entitlement to qualified immunity follows a two-part test, which asks whether (i) the plaintiff has alleged or shown a violation of a constitutional right; and (ii) if the right at issue was "clearly established" at the time of the defendant's alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

A § 1983 claim for excessive force by a law enforcement officer may be based on the Fourth Amendment's protection from unreasonable seizures of a person. *Groman*, 47 F.3d at 633. An excessive-force claim is cognizable under § 1983 where a plaintiff demonstrates that an unreasonable seizure occurred. *Graham v. Connor*, 490 U.S. 386, 396 (1989). Merely showing that a seizure occurred, without more, is insufficient to bring a successful claim for excessive use of force. *Id*. Instead, "[d]etermining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id*.

Because "[t]he Fourth Amendment inquiry is one of objective reasonableness," a police officer's intent plays no role in the calculus of reasonableness, and "the use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id*. at 399, 396. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers [] violates the Fourth Amendment" because "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments [] about the amount of force that is necessary in a particular situation." *Id.*

at 396. As a result, the objective-reasonableness test articulated in *Graham* "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Sharrar v. Felsing*, 128 F.3d 810, 820–21 (3d Cir. 1997) (relying on *Graham*, 490 U.S. at 396).

The Court now turns to the relevant facts.[4] While Plaintiff alleged in his Complaint that the Officers "beat plaintiff about the body with their hands [] causing multiple head wounds, concussion, and scarring," the record provides contrast. (Compl. at 11, ¶ 4).[5] In fact, Boyd's deposition testimony demonstrates that his arrest was effectuated with a minimal amount of force. (Boyd Dep. 55–59). After the Officers returned to Boyd's residence, they tried to confiscate his laptop. (SMF ¶ 9). Boyd "walked over to protect his laptop by standing over [it]," and then as Domenech "attempted to confiscate the laptop, [Boyd] pushed her." (*Id.* ¶¶ 10–11). Boyd testified that he was hovering over his laptop to prevent the Officers from taking it, and conceded that the Officers could not have picked up his laptop without him moving. (Boyd Dep. at 54:1–13). Although Olszewski stated in his certification that while "Domenech attempted to take the computer [Boyd] pushed her away," (Olszewski Cert. ¶ 14), Boyd testified that he never prevented Domenech from taking his laptop. (Boyd Dep. at 55:8–9).

At this point, the Officers had probable cause to arrest Boyd for obstruction pursuant to N.J.S.A. § 2C:29-1, and attempted to place him under arrest. (SMF ¶ 12). The record shows that

---

[4]     Plaintiff has not submitted to this Court any deposition of any of the Officers nor any substantive responses to Defendants' motion, arguments, and SMF. For the reasons discussed in *supra* note 2, this Court relies on Defendants' SMF, the undisputed certification by Officer Olszewski (the "Olszewski Cert."), and Boyd's deposition testimony.

[5]     Relevant here, Plaintiff's fifth count alleges that an "Officer O'Toole" used excessive force against Boyd. (Compl. at 12, ¶ 2). However, Officer O'Toole is not a named defendant in the complaint and appears in no other documents in the record. (*Id.*). Because Officer O'Toole is not a named defendant, the Court need not address claims against him or her.

Boyd was non-compliant and was shouting, and that an agitated crowd had started to gather around the Officers as they tried to place him under arrest. (*Id.*). Boyd testified that "[the Officers] picked up the laptop. They took the laptop. I was handcuffed . . . ." (Boyd Dep. at 57:8–10). His testimony describing his arrest appears uneventful. Boyd testified that during his arrest, he was standing up and the Officers grabbed his two arms and put them behind his back, and that immediately following his arrest he was escorted out of his backyard into a patrol car. (*Id.* at 57–58). When asked during his deposition whether anything else happened to him during his arrest, Boyd responded that "[He] had a headache," and "a scratch on [his] forehead." (*Id.* at 59–60). And, since his arrest, Boyd has never sought medical treatment for any injuries he claims he suffered because of his arrest. (D.E. 30-8 at 3, ¶ 22).

Boyd's claim that the Officers violated his Fourth Amendment right by using excessive force during his arrest is without merit. The record shows that (i) the Officers responded to a party with least 23 people;[6] (ii) that the Officers had probable cause to place Boyd under arrest; (iii) that Boyd remained standing for the entire duration of his arrest and did not testify that he was hit, choked, or otherwise assaulted by the Officers; (iv) immediately following his arrest, Boyd was taken to a patrol car; (v) the only injury Boyd claims he suffered was a headache and a scratch on his forehead; and (vi) since his arrest Boyd has never sought medical care. (Boyd Dep. at 25:4–7). It is difficult for this Court to conceive how the Officers could have used any less force than they did to arrest Boyd. In light of these facts, the Court finds that the Officers' physical contact with Boyd during his arrest was objectively reasonable for purposes of the Fourth Amendment. Accordingly, Defendants' motion for summary judgment on this issue is granted.

---

[6]     Although Defendants claim that far more people were in attendance, the Court draws all justifiable inferences in Plaintiff's favor and uses the lowest attendance estimate. *See Marino v. Industrial Crating Co.*, 358 F.3d 241 (3d Cir. 2004).

The Court turns to Defendants' argument that the Officers are entitled to qualified immunity. (Def. Mov. Br. at 21). Defendants' request for this Court to grant the Officers qualified immunity is vague, undetailed, and unsupported by any relevant and articulable facts. (*See id.* at 21–23). Indeed, Defendants appear to be requesting qualified immunity for any and all potential constitutional violations without referencing any specific constitutional grounds to which qualified immunity may apply.[7] (*Id.*) Half of the qualified immunity analysis requires this Court to determine whether a given constitutional right was clearly established at the time of the violation. *See Pearson* 555 U.S. at 236. Although Defendants provide the analytical framework for determining whether an officer may be entitled to qualified immunity, they fail to identify any constitutional basis for qualified immunity in this case and fail to cite any authority on whether a given right was (or was not) clearly established at the time of the violation. (*See* Def. Mov. Br. at 21–23). This Court therefore finds that Defendants have failed to meet the initial burden of proving that they are entitled to qualified immunity for Plaintiff's claim that the Officers violated Boyd's Fourth Amendment rights when they entered his property without probable cause or a warrant. As such, Defendants' motion for summary judgment on this claim may be denied on this ground alone. In any event, the Court finds that Defendants' qualified-immunity arguments also fails on the merits. First, the Court addresses whether Plaintiff has established the violation of a constitutional right, and if a violation has occurred, whether that right was clearly established at the time of its violation. *See Pearson*, 555 U.S. at 236.

A search occurs when the government "unlawfully, physically occupies private property for the purpose of obtaining information." *Free Speech Coal., Inc. v. Att'y Gen. of United States*, 677 F.3d 519, 543 (3d Cir. 2012) (citing *United States v. Jones*, 565 U.S. 400, 404 (2012)). A

---

[7] The section discussing qualified immunity in Defendants' brief begins by stating: "The Defendant officers are also entitled to qualified immunity against Plaintiff's allegations." (Def. Mov. Br. at 21).

search also occurs when "the government violates an individual's expectation of privacy that 'society recognizes as reasonable.'" *Kyllo v. United States*, 533 U.S. 27, 33 (2001) (citing *Katz v. United States*, 389 U.S. 347, 361 (1967) (Harland, J., concurring)). It has long been recognized that "[t]he Fourth Amendment accords special protection to a person's expectation of privacy in his own home." *Baldwin v. United States*, 450 U.S. 1045, 1046 (1981) (citing *Payton v. New York*, 445 U.S. 573, 585 (1980)). "Absent special circumstances [] searches of a person's home are constitutionally unreasonable when conducted without probable cause and without a warrant." *Id*.

The dispositive legal question here is whether a municipal noise violation, on its own, constitutes sufficient probable cause for police officers to enter a person's property. Until 2010, the answer to that question would have been answered in the affirmative. *See Noone v. City of Ocean City*, 60 Fed. App'x 904, 910 (3d Cir. 2003). While *Noone* recognized that absent exigent circumstances, "[u]nder the Fourth Amendment, a warrantless entry into a private home is presumptively unreasonable," it held that "the record here shows exigent circumstances [that] justified a warrantless entry into Noone's property . . . [because police] observed what they believed to be underage drinking and violation of a noise ordinance." *Id*. In *Noone*, the Third Circuit sided with the Sixth Circuit's approach in *United States v. Rohrig*, which relied on the community caretaking doctrine, by holding that "officers' warrantless entry into a home was permissible since they were acting as community caretakers to abate a significant noise nuisance." *Id.* (quoting 98. F.3d at 1506, 1509 (6th Cir. 1996)).

Seven years later, the Third Circuit abrogated that holding in a published opinion, which held: "The community caretaking doctrine cannot be used to justify warrantless searches of a home." *Ray v. Township of Warren*, 626 F.3d 170, 177 (3d Cir. 2010). In rejecting the use of the community caretaking doctrine to permit warrantless entry into the home, the Third Circuit's

opinion explicitly recognized the reasoning of the Sixth Circuit's holding in *Rohrig*. Thus, by repudiating the reasoning in *Rohrig* and *Noone*, which permitted warrantless entry into the home to abate a noise violation, the Third Circuit made clear that noise violations absent other recognized exigencies could not be used to circumvent the Fourth Amendment's warrant requirement. *Id.*

In Count IV of his Complaint, Plaintiff alleges that Defendants unlawfully entered his property without a warrant or probable cause in violation of the Fourth Amendment. (Compl. at 11). It is undisputed that Defendants entered and were on Plaintiff's property. (SMF ¶¶ 4–6). It is also undisputed that Defendants did not have a warrant to enter Plaintiff's property and, as a result, never presented one to Boyd. (*Id.*) Finally, it is undisputed that Defendants' only justification for entering Plaintiff's property was "complaints from neighbors of an ongoing loud party." (SMF ¶ 4). Thus, Defendants conducted an unlawful search of Boyd's home, which violated his Fourth Amendment right to be free from unreasonable searches and seizures. As such, Plaintiff has established the first element required to overcome the defense of qualified-immunity—the violation of a constitutional right.

Next, the Court turns to whether the right at issue was clearly established at the time Defendants violated it. *See Pearson* 555 U.S. at 236. "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mammaro v. N.J. Div. of Child Protection & Permanency*, 814 F.3d 164, 168 (2016) (cleaned up). "[T]here must be sufficient precedent at the time of action, factually similar to the plaintiff's allegations, to put defendant on notice that his or her conduct is constitutionally prohibited." *Id.*

Here, the Officers unlawfully entered Boyd's property in August 2012, two years after the Third Circuit had issued the *Ray* decision. In addition, the relevant factual relationship between *Ray* and the instant case are strong. *Ray* addressed whether the investigation of a noise ordinance constituted sufficient probable cause to conduct a search under the Fourth Amendment and held that it did not. Thus, the Court finds that the right at issue was clearly established, and Plaintiff has therefore demonstrated the second element required to overcome the defense of qualified immunity. For these reasons, Defendants' motion for summary judgment premised on the defense of qualified-immunity is denied. As a result, Boyd's claim that Defendants violated his Fourth Amendment rights when they entered his property without probable cause or a warrant will proceed because Defendants are not entitled to qualified immunity.[8]

**42 U.S.C. § 1986.** Defendants next maintain that they are entitled to summary judgment as a matter of law on Plaintiff's § 1986 claim. (Def. Mov. Br. at 23). "In order to maintain a cause of action under § 1986, [a] plaintiff must show the existence of a § 1985 conspiracy." *Clark v. Clabaugh*, 20 F.3d 1290, 1295 n.5 (3d Cir. 1994). "Any issue of material fact in a § 1986 action presupposes and relates to a § 1985 conspiracy. Thus, if the elements of the § 1985 conspiracy are missing, a § 1986 cause of action is properly dismissed on summary judgment." *Id*.

Because Plaintiff has not alleged a 42 U.S.C. § 1985 conspiracy, his § 1986 claim is not legally viable. Defendants are therefore entitled to summary judgment as a matter of law on this claim.

**Monell Violations.** Finally, Defendants argue that they are entitled to summary judgment on Plaintiff's *Monell* claims. (Def. Mov. Br. at 24). To impose liability on a municipality or local

---

[8]     Under Fed. R. Civ. P. 56(f), a court, after giving the parties notice and a reasonable time to respond, may: "grant summary judgment for the nonmovant after giving notice and a reasonable time to respond"; "grant the motion on ground not raised by a party"; or it may "consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute." Fed. R. Civ. P. 56(f)(1)–(3).

government under § 1983, a plaintiff must show (i) the existence of a relevant policy or custom and (ii) that the policy caused the constitutional violation alleged. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159, 173 (3d Cir. 2005). "A municipality's liability under § 1983 must be founded upon evidence that the government unit itself supported a violation of constitutional rights." *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990); *see also Monell*, 436 U.S. at 690–91.

*Monell* liability based on a municipality's failure to train or supervise employees "requires a showing that the failure amounts to a deliberate indifference to the rights of persons with whom those employees will come into contact. Additionally, the identified deficiency in a city's training program must be closely related to the ultimate injury; or in other words, the deficiency in training [must have] actually caused the constitutional violation." *Thomas v. Cumberland Cty.*, 749 F.3d 217, 222 (3d Cir. 2014). "[I]n order for a municipality's failure to train or supervise to amount to deliberate indifference, it must be shown that (1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Carter v. City. of Philadelphia*, 181 F.3d 339, 357 (3d Cir. 1999) (citations and footnote omitted). Therefore, "[a] pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

Plaintiff here has not provided this Court with a single iota of evidence that a custom or policy existed within Jersey City or the JCPD. Plaintiff took no depositions, submitted no certifications, expert reports, or documents. Thus, nothing in the record suggests a genuine issue

of material fact about whether Jersey City had a custom or policy that led to the violation of Boyd's constitutional rights.

Although during summary judgment the non-moving party does receive the benefit of all factual inferences, the non-moving party "must point to some evidence in the record that creates a genuine issue of material fact." *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006). Simply put, summary judgment is "put up or shut up" time for the non-moving party. *See Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1009 (3d Cir. 1985). Because Plaintiff has failed to provide any evidence that a custom or policy existed within the JCPD or Jersey City, Defendants are entitled to summary judgment as a matter of law.

## IV.    CONCLUSION

For these reasons, the Court GRANTS-in-part and DENIES-in-part the Defendants' motion for summary judgment. An appropriate Order accompanies this Opinion.


*s/Esther Salas*
**Esther Salas, U.S.D.J.**